UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────

ORIENT EXPRESS CONTAINER CO., INC.,

                          Plaintiff,

           -v-

EMU LINES PVT. LTD. and AMASS GLOBAL NETWORK (US) INC,

                          Defendants.

23-CV-9887 (JPO)

MEMORANDUM AND ORDER

───────────────────────────────

J. PAUL OETKEN, District Judge:

Plaintiff Orient Express Container Co, Inc. ("OEC") brings this action against EMU Lines Pvt. Ltd. ("EMU") and Amass Global Network (US) Inc ("Amass") alleging various violations of the Carriage of Goods by Sea Act, 46 U.S.C. § 30701 *et seq.*, that allegedly resulted in damages to a cargo of baby clothing. (ECF No. 8.) Amass failed to file a timely answer, and the Clerk of Court certified Amass's default ("Default"). (ECF No. 28.) Amass now moves to set aside the Default pursuant to Federal Rule of Civil Procedure 55(c). (ECF No. 31; ECF No. 32.) For the reasons that follow, Amass's motion to set aside the Default is granted.

**I.    Background**

    **A.    Allegations in the Complaints**

On November 8, 2023, non-party Certain Underwriters Subscribing to Policy Number FAL_V135QH22PNGF ("Certain Underwriters") filed its complaint against OEC. (*See* ECF No. 1 ("C.U. Complaint").) In the C.U. Complaint, Certain Underwriters alleged that it retained OEC to arrange transportation from India to the United States of 554 cartons of baby clothing ("Cargo"). (C.U. Complaint ¶¶ 1, 9.) The Certain Underwriters alleged that the Cargo arrived at

1

its destination damaged by moisture that resulted in substantial mold growth. (*Id*. ¶ 13.) The damage allegedly cost the Certain Underwriters $223,954.51. (*Id.* ¶ 14.)

On February 16, 2024, OEC filed a third-party complaint against EMU and Amass. (*See* ECF No. 8 ("OEC Complaint").) OEC alleged that EMU and/or Amass were responsible for the care of the Cargo at issue, as OEC had "contacted Amass, which arranged for a co-loading of the Cargo with EMU." (ECF No. 33 ¶ 4 ("Resp. Mem.").) Therefore, according to the OEC Complaint, any damage to the Cargo was due in whole or in part to error by EMU or Amass. (OEC Complaint ¶ 14.) OEC demanded from EMU and Amass damages in an amount to be determined at trial, costs and expenses including attorney's fees, and other relief determined to be just. (*Id*. at ¶ 29.)

On July 9, 2025, OEC and Certain Underwriters informed the Court that they had reached a settlement of Certain Underwriters's claims against OEC (ECF No. 38), and the parties subsequently moved for dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2) (ECF No. 39). On July 24, 2025, this Court granted the joint motion and dismissed Certain Underwriters's claims against OEC with prejudice. (ECF No. 40.) OEC's suit against EMU and Amass remains. *Id*.

**B.      Facts Leading to the Entry of the Clerk's Certificate of Default**

According to OEC's Response in Opposition to the Motion to Set Aside Default ("Resp. Mem."), on April 2, 2024, counsel for OEC instructed Jolantyna Cagney ("Cagney"), manager of Classic Legal Support Services, Inc., to arrange service of process on Amass of the summons, the C.U. Complaint, OEC's Answer to the C.U. Complaint, and the OEC Complaint. (Resp. Mem. ¶ 10.) Service of the Third-Party Complaint was purportedly made on Amass on April 9, 2024. (ECF No. 15.) According to the Affidavit of Service, Cagney served the requested

materials at Amass's office to an individual who identified as "Frank Becker (Managing Agent)." (*Id*. (capitalization omitted).) Becker declared to Cagney that he was authorized to accept service on behalf of Amass. (*Id.*) Proof of service on Amass was then filed on the docket on April 11, 2024. (*Id.*)

Amass failed to answer, plead, or otherwise defend the instant action within the required period of time under Federal Rule of Civil Procedure 12(a)(1)(A)(i). As a result, OEC filed a request for the issuance of a certificate of default as to Amass. (ECF No. 26; ECF No. 27.) On March 18, 2025, the Clerk entered a Certificate of Default as to Amass. (ECF No. 28.) Counsel for OEC served a copy of the proposed certificate of default and request for entry of a Certificate of Default on Amass by certified mail on Amass's Los Angeles address on March 18, 2025, in accordance with Local Rule 55.1(a)(4). (ECF No. 29.) That mail was received by Amass on or about March 24, 2025. (ECF No. 32-1 ("Bai Decl.") at ¶ 6.) Thereafter, Amass retained counsel to appear and to respond to the Default. (*Id.* ¶ 8.) This Motion to Set Aside the Default followed. (ECF No. 31; ECF No. 32.)

## II.     Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once an entry of default has been made, the defendant may move to set aside the default pursuant to Rule 55(c) for good cause shown. Fed. R. Civ. P. 55(c).

Where, as here, a Certificate of Default has been entered by the Clerk of the Court, but no default judgment has yet been entered, the Court decides a motion to vacate the entry of default pursuant to Rule 55(c), which is more lenient than the standard to set aside a default judgment

3

under Rule 60(b). *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) ("[T]he standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to Rule 60(b).").

In determining whether good cause exists to set aside an entry of default, courts consider: (1) "the willfulness of the default"; (2) "the level of prejudice that the non-defaulting party may suffer should relief be granted"; and (3) "the existence of a meritorious defense." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001).

"It is well established that default judgments are disfavored," and that "[a] clear preference exists for cases to be adjudicated on the merits." *Id*. at 174. "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

## II.   Discussion

The Court considers in turn the relevant factors to determine whether to vacate the Default entered in the instant case under Rule 55(c).

### A.   Willfulness

The Second Circuit has "interpreted 'willfulness,' in the context of a default, to refer to conduct that is more than merely negligent or careless." *S.E.C. v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998). However, "the court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *Id*. In order to establish a finding of willfulness, there is no requirement that the party have acted in bad faith, but rather "it is sufficient that the defendant defaulted deliberately." *Gucci Am., Inc. v. Gold Ctr. Jewelry,* 158 F.3d 631, 635 (2d Cir.1998).

4

In support of its motion to vacate, Amass has submitted a declaration from James Bai ("Bai"), the CEO of Amass.  (*See generally* Bai Decl.)  Bai states that Amass's first notice of the present action came on March 24, 2025, when Amass received mail at its Los Angeles office from counsel for OEC.  (*Id*. ¶ 6).  Bai avers that, prior to that date, Amass had not been contacted by OEC or anyone acting on its behalf to serve the case-initiating papers.  (*Id*. ¶ 7.)  According to Bai's declaration, though OEC states that it served copies of the case-initiating papers on Amass at its office in New York to someone who gave the name Frank Becker, there is no one by that name who has ever been employed by Amass in any capacity.  (*Id*. ¶ 4.)  OEC responds that the only reasonable explanation for Bai's declaration "is that an [Amass] employee or agent provided a false name to [Cagney]."  (Resp. Mem. at 10.)

Resolving any doubts in favor of the defaulting party, this Court concludes that Amass's conduct does not rise to the level of willfulness.  *McNulty,* 137 F.3d at 738.  Based on Bai's declaration, Amass's failure to answer was not the result of willful disregard, neglect, or dilatory conduct.  (*See* Bai Decl. ¶ 4.)  Rather, had Amass received notice earlier, it would have responded promptly, as it did once it purportedly first received notice in March 2025.  (ECF No. 30.)

### B.   Prejudice to Plaintiff

Prejudice to the nondefaulting party is "the single most persuasive reason for denying a Rule 55(c) motion."  *Murray Eng'g, P.C. v. Windermere Properties LLC,* 12-CV-52, 2013 WL 1809637, at *5 (S.D.N.Y. Apr. 30, 2013) (internal quotation marks omitted).  "In order to show the requisite level [of] prejudice, the plaintiff must demonstrate that any prejudice resulting from the defendant's default cannot be rectified [by] the Court in another manner were the default to be vacated."  *Id*.  Moreover, it is well established that "delay alone is not a sufficient basis for

5

establishing prejudice. Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir.1983) (internal citations and quotation marks omitted).

OEC argues that it has been "prejudiced by [Amass's] significant delay in these proceedings" as it has "been forced to litigate this case for over a year, while [Amass], who acted as carrier or agent of the carrier of the Cargo . . . has refused to engage, placing the burden *and the costs* of defending this Action solely on OEC." (Resp. Mem. at 10-11 (emphasis in original).) It is true that OEC invested time and money to litigate Certain Underwriters's claims against it. Such expenses, though by no means trivial, can be cured by the imposition of a condition that, if OEC's Complaint is found meritorious, OEC may be entitled to a remedy over and against EMU and Amass in the form of common law contribution and indemnification, as OEC has demanded. (OEC Complaint ¶ 16-19.)

C. **Meritorious Defense**

"In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively," but he must present credible evidence of facts that would constitute a complete defense. *State St. Bank and Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167 (2d Cir. 2004) (internal quotation marks omitted). Having reviewed the briefs and accompanying materials submitted by Amass, the Court has determined that Amass may have a meritorious defense in this action. Here, Bai's declaration offers three defenses: that OEC's claim may be time-barred pursuant to the provisions of the relevant bill of lading; that OEC cannot prove good order and condition of the Cargo at loading; and that OEC's alleged damages may have been caused by third parties

over whom Amass exercises no control. (Bai Decl. ¶ 9.) Those facts would constitute a complete defense if true, *see Enron Oil* Corp, 10 F.3d at 98, and are not, as OEC alleges, "mere conclusory statements." (Resp. Mem. at 11.)

## IV.     Conclusion

For the foregoing reasons, it is hereby ORDERED that Amass's motion to set aside default is GRANTED. Amass shall answer or otherwise respond to the operative complaint within 14 days after publication of this memorandum and order.

The Clerk of Court is respectfully directed to vacate the Certificate of Default entered at ECF No. 28. The Clerk of Court also is directed to terminate the motion at ECF No. 31.

SO ORDERED.

Dated: August 13, 2025
         New York, New York

_____
                              J. PAUL OETKEN
                              United States District Judge